UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TERRIEL SMITH,

              Petitioner,

     -against-

MICHAEL CAPRA, Superintendent,
Sing Sing Correctional Facility,

             Respondent.

13 Civ. 2104 (AJN)

MEMORANDUM AND ORDER

---

ALISON J. NATHAN, District Judge:

Petitioner Terriel Smith timely filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his 2009 convictions and sentence from New York Supreme Court. For the reasons set forth below, all of Mr. Smith's claims are either procedurally barred, without merit, or not subject to habeas corpus review. Accordingly, the petition is DENIED.

## I.   BACKGROUND

Mr. Smith was accused of several crimes arising from an assault on Bonnie Wong in her apartment building elevator, including burglary, assault, unlawful imprisonment, and menacing.

### A.   Trial

Ms. Wong testified at trial as follows. On February 15, 2007, she was returning from volunteering at an AIDS clinic to her home at 3250 Broadway. Tr. 113. As she approached the building, she saw Smith come out of the elevator. Tr. 114–15. He held the exterior door open for her and then followed as she went through the lobby into the elevator. Tr. 116, 119. As they rode the elevator up to the sixteenth floor, he asked if she had a boyfriend. Tr. 122. When the elevator doors opened, he blocked her path, put his arms around her neck, covered her mouth,

and pulled her back into the elevator.  Tr. 123.  The two struggled, she fell to the floor and screamed, and he pushed her face against the floor, cutting the insides of her cheeks.  Tr. 123–25, 129–30.  The struggle continued as the elevator descended, ending when the elevator stopped on a lower floor and Smith ran away.  Tr. 126–29.  Wong then got out, called 911, went to the lobby, and waited for help to arrive.  Tr. 133.

New York City Police Department Officer Brenda Velez responded to the scene and found Ms. Wong, who "looked disheveled, like she had been in a scuffle[, and] appeared to have blood on her face" and fingers and "cuts on her hand."  Tr. 53, 69, 82–85.  Officer Velez escorted Wong to an unmarked police car, from which she viewed Smith; although she failed to identify him because the blinking police lights obscured her view, she identified him in a lineup at the police precinct the next day.  Tr. 63–64, 139, 142–45; 215–23.

Giselle Ceballos also testified, stating that she lived with her family in apartment 3J of 545 West 126th Street, an adjacent building, and that Mr. Smith had tried to enter her apartment, claiming that he worked for the cable company.  Tr. 245, 248–49.  She refused to let him in, but he tried to force his way in, fleeing only when her mother screamed.  Tr. 245, 249–50.  They called the police, who responded and searched and found him in the lobby.  Tr. 251, 276–80. Mr. Smith gave the police a false name and claimed to be visiting friends in apartment 3J, and was arrested after Ceballos and her mother identified him.  Tr. 253, 269–70, 280–81.

Officer Velez and Ms. Wong testified that the building was not open to the general public, but only to "tenants and . . . their guests, was locked, and had a no trespassing sign. Tr. 41, 50–51, 116–17.  Additional testimony was offered to show that a canine tracked Smith's scent from 3250 Broadway to 545 West 126th Street, and that Mr. Smith's DNA was found on a hat and jacket recovered from 3250 Broadway.

2

At the close of the People's case, defense counsel moved to dismiss the burglary charges, arguing the People had not made out a prima facie case "because they never showed when [Mr. Smith] entered either" building , and therefore "[no]thing can be inferred" to prove knowingly unlawful entry.  Tr. 377.  The Court denied the motions.  Tr. 380.

The defense then put on a case, calling Mr. Smith as a witness.  Mr. Smith testified, arguing that his encounter with Ms. Wong was a scuffle resulting from a drug deal gone awry rather than a violent assault.  He was in a financial slump, having been laid off, and was in need of extra money.  Tr. 386–88.  He thus "reverted back to [his] old ways" of drug selling and made acquaintance with a man named Anth who lived at 3250 Broadway and had friends that sold crack cocaine.  Tr. 388–89.  Anth and Smith went to several bars before heading uptown to meet the drug seller.  Tr. 389.  When they arrived, Anth made a phone call, buzzed an apartment, and used his key to open the door.  Tr. 389–90.  They entered the building lobby together and Anth had him wait in the lobby while he placed the order.  Tr. 389–90.  Mr. Smith did not want to wait in the lobby while Anth took his money, but agreed to do so once they swapped jackets for collateral, and Anth took his $300 upstairs to buy one half-ounce of crack cocaine.  Tr. 392–93.

After what was "supposed to be a fast transaction" lingered into a half hour, Smith took the elevator to the fifth floor, found Anth talking to another man, asked them to hurry up, was scolded for intruding, and returned to the lobby.  Tr. 393–94.  While he exited the elevator in the lobby, Mr. Smith saw Ms. Wong outside, opened the door for her as a courtesy, said "hi" but nothing more, and continued waiting in the lobby while she took the elevator upstairs to the fifth floor.  Tr. 395, 401.  Waiting five to ten minutes longer, Smith decided to retrieve his money and leave, fearing the "spooky" lobby and its risks, including the fact that "sometimes officers walk in there and they want to arrest you without making confirmation as to who you are there to see."

3

Tr. 396–97.  When he returned upstairs, Mr. Smith saw Ms. Wong talking with the dealer and realized the reason for the delay—everyone had been waiting for her, "the transporter[,] to arrive with the goods."  Tr. 410.  He demanded his money back, but the dealer instead handed him just $150 worth of powdered cocaine.  Tr. 397–98, 413.  Ms. Wong was standing with his money in her hand, and the dealer refused to give him his money back, so Smith "threw the drugs down . . . grabbed [Wong's] hand and attempted to take the money out of her hands."  Tr. 399.  The dealer then punched him in the head, they scuffled, Ms. Wong tried to break things up, and the dealer pulled a gun.  Tr. 399.  At that point, Anth ran away, still holding Mr. Smith's jacket and his remaining $150, so Smith chased him to the adjacent building, up to apartment 3J, and banged on the door, asking for his money back.  Tr. 398–401.  Someone inside the apartment threatened to call the police, so Smith went back downstairs, where he encountered the police officers who arrested him, saying that he "beat somebody up in the elevator."  Tr. 401–02.

### B.      Conviction and Sentence

The jury found Mr. Smith guilty of first-degree burglary, third-degree assault, second-degree unlawful imprisonment, and third-degree menacing, Tr. 565–66, and acquitted him of burglary in the second degree, relating to the second building, and unlawful imprisonment in the first degree.  Tr. 565.  Judge Zweibel of the Supreme Court of New York County denied Petitioner's motion to set aside the verdict.  Gill Decl. Exs. A, C.  On July 29, 2009, Judge Zweibel adjudicated Petitioner a persistent felony offender and sentenced him to 15 years to life on the burglary count, and to concurrent, lesser sentences on the remaining misdemeanor counts.  Sent'g Tr. 28, 31.

### C.      Direct Appeal

Petitioner appealed his conviction to the Appellate Division, First Department, raising four claims.  Gill Decl. Ex. F (Pet.'s App. Div. Br.).  First, Petitioner argued the evidence was

4

legally insufficient and the verdict was against the weight of the evidence, because there was no evidence of knowingly unlawful entry, and insufficient evidence of physical injury. *Id.* at 31. Second, he argued that prosecutorial misconduct in summation deprived him of a fair trial. *Id.* at 41. Third, he argued that he was deprived of his right to a jury trial and due process through the operation of New York's enhanced sentencing scheme in violation of *Apprendi* and its progeny. *Id.* at 51. Finally, he argued that his adjudication as a persistent felon should be vacated in the interest of justice. *Id.* at 55.

The Appellate Division unanimously affirmed Petitioner's conviction on June 23, 2011. *People v. Smith*, 85 A.D.3d 639, 926 N.Y.S.2d 466 (1st Dept. 2011). There was sufficient evidence of knowingly unlawful entry because "the evidence warrants the inference that defendant knew he was not permitted to enter a locked residential building with a no-trespassing sign," leaving "no basis for disturbing the jury's credibility determinations" when "the jury was free to reject th[e defendant's] testimony . . . that he entered as an invitee of a resident." *Id.* at 639, 926 N.Y.S.2d at 467. The court found both the physical injury insufficiency claim and prosecutorial summation claims unpreserved, and "as an alternative holding . . . also reject[ed] them on the merits." *Id.* The court rejected Petitioner's sentencing claims, finding that Judge Zweibel constitutionally imposed a persistent felony offender sentence under previous New York Court of Appeals decisions upholding the enhanced sentencing statute and did not abuse his discretion. *Id.* (citations omitted).

Petitioner sought leave to appeal on the *Apprendi* claim and insufficient evidence of unlawful entry claim. Gill Decl. Ex. I (Pet.'s Leave Appl.) On October 26, 2011, the New York Court of Appeals denied leave to appeal. *People v. Smith*, 17 N.Y.3d 905, 933 N.Y.S.2d 660 (2011). On March 5, 2012, the United States Supreme Court denied Smith's petition for a writ

of certiorari. *Smith v. New York*, 132 S. Ct. 1720, 182 L.Ed.2d 259 (2012). Petitioner has also filed a state court collateral attack alleging ineffective assistance of counsel, but does not raise an ineffective assistance of counsel claim in this habeas corpus petition. Pet. at 4.

### D.    Habeas Corpus Petition

Petitioner timely filed a habeas corpus petition under 28 U.S.C. § 2254 on March 4, 2013, seeking relief on the same grounds pursued in state court on direct appeal: (1) that he was deprived of a fair trial because the verdict was against the weight of the evidence, and the evidence was legally insufficient to support his conviction; (2) that the prosecutor's comments in summation constituted misconduct depriving him of a fair trial; (3) that his sentence was unconstitutional in light of the Supreme Court's decision in *New Jersey v. Apprendi*, 530 U.S. 466 (2000), and its progeny; and (4) that his sentence was unduly harsh and excessive.

## II.    STANDARD OF REVIEW

### A.    Habeas Corpus Review Under 28 U.S.C. § 2254

Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2241 *et seq.*, if a state court has adjudicated the merits of a claim raised in a federal habeas corpus petition, a writ of habeas corpus may not be granted "unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). A federal court considering a state prisoner's application for a writ of habeas corpus must presume the state court's factual findings are correct, and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Even if

a "court finds that the state court engaged in an unreasonable application of established law, resulting in constitutional error, it must next consider whether such error was harmless." *Howard v. Walker*, 406 F.3d 114, 122 (2d Cir. 2005).

### B.   Procedural Default

A petitioner may be barred from obtaining federal habeas corpus relief for a federal constitutional claim due to failure to comply with a state procedural rule.  The state may invoke procedural default as a bar to federal review when a petitioner's violation of an applicable state procedural rule provides an "adequate" and "independent" state ground for denying petitioner's federal constitutional claim.  *See Walker v. Martin*, 562 U.S. ____, ____, 131 S. Ct. 1120, 1127, 179 L.Ed.2d 62 (2011).  To be an *adequate* ground, the rule underlying the decision must have been "firmly established and regularly followed by the state in question."  *Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011) (quotation marks and citation omitted).  To serve as an *independent* ground, a state court's "reliance on state law must be clear from the face of the opinion."  *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 809 (2d Cir. 2000) (quotation marks and citation omitted).

Procedural default will result unless the petitioner can "excuse" the default by showing "either 'cause' and actual 'prejudice' or that he is 'actually innocent.'"  *Gutierrez v. Smith*, 702 F.3d 103, 111 (2d Cir. 2012) (quoting *DiSimone v. Phillips*, 461 F.3d 181, 190 (2d Cir. 2006)). To show "cause," a petitioner must establish "some objective factor, external to the defense, explaining why the claim was not previously raised."  *Jones v. Brandt*, No. 09 Civ. 1035 (SAS), 2013 WL 5423965, at *4 (Sept. 26, 2013) (citing *Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999).  Cause arises when "(1) the factual or legal basis for a claim was not reasonably available to counsel, (2) some interference by state officials made compliance with the procedural rule impracticable, or (3) the procedural default is the result of ineffective assistance of counsel."

*Windley v. Lee*, No. 11 Civ. 1275 (DLC), 2013 WL 2350431, at *32 (S.D.N.Y. May 16, 2013)

(alterations, quotation marks, and citation omitted).

To raise an actual innocence claim, a petitioner "must prove his factual innocence, not mere legal insufficiency, and demonstrate that in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *United States v. Thorn*, 659 F.3d 227, 234 (2d Cir. 2011) (quoting *Bousley v. United States*, 523 U.S. 614, 623, 118 S. Ct. 1604, 1611, 140 L.Ed.2d 828 (1998)) (quotation marks omitted).

### C. Exhaustion

A state prisoner is not entitled to federal habeas corpus relief unless "the applicant has exhausted the remedies available in the courts of the State," "there is an absence of available State corrective process." 28 U.S.C. §§ 2254(b)(1)(A)–(B)(i). "Exhaustion of state remedies requires that a petitioner fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011) (quoting *Duncan v. Henry,* 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995)) (alterations and quotation marks omitted). "In order to have fairly presented his federal claim to the state courts the petitioner must have informed the state court of both the factual and the legal premises of the claim he asserts in federal court." *Daye v. Attorney General of State of N.Y.,* 696 F.2d 186, 191 (2d Cir. 1982) (en banc). "[A] state prisoner is not required to cite "chapter and verse of the Constitution" in order to satisfy this requirement." *Carvajal v. Artus*, 633 F.3d at 104 (*quoting id.* at 194). A prisoner may instead "(a) rel[y] on pertinent federal cases employing constitutional analysis, (b) rel[y] on state cases employing constitutional analysis in like fact situations, (c) assert[] . . . the claim in terms so particular as to call to mind a specific [Constitutional] right . . . , [or] (d) alleg[e] . . . a pattern of facts that is well within the mainstream of constitutional litigation." *Id.*

## III.   DISCUSSION

### A.   Weight of the Evidence Claim

In his first ground for habeas relief, Mr. Smith claims that he was deprived of a fair trial because the verdict was against the weight of the evidence. Pet. at 5. Federal habeas corpus review only provides for relief for persons with federal claims: those "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Weight of the evidence is a pure state law claim for reversal or modification of "a determination that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." N.Y. Crim. Proc. Law. § 470.15(5). As Petitioner's weight of the evidence claim does not present a federal claim, it is not within the scope of federal habeas review. *See Douglas v. Portuondo,* 232 F.Supp.2d 106, 116 (S.D.N.Y. 2002).

### B.   Sufficiency of the Evidence Claim

In his first ground for habeas relief, Mr. Smith also argues that his conviction violated due process because the verdict was legally insufficient to support his conviction for first degree burglary in two ways: first, that evidence did not sufficiently establish that the victim suffered physical injury; second, that there was no evidence that Petitioner knowingly entered the building unlawfully. Pet. at 5.

### 1.   Physical Injury

#### *a)   Failure to Exhaust*

Petitioner's physical injury insufficiency claim is not exhausted as required by 28 U.S.C. § 2254(b) because he omitted it from his leave application to the New York Court of Appeals. *See* Gill Decl. Ex. I (Pet.'s Leave Appl.) (seeking leave to appeal the *Apprendi* claim and the preserved claim regarding legally insufficient evidence of knowingly unlawful entry). Not including the physical injury claim in his leave application denied the state court a fair

presentation of this federal constitutional claim.  *See Smith v. Duncan*, 411 F.3d 340, 345 (2d

Cir. 2005).  "Generally 'we assume that the Court of Appeals would construe a petitioner's leave

application as abandoning claims that the petitioner had pressed to the Appellate Division below'

where those claims were not presented to the New York high court for review."  *Id.* (quoting

*Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005).  The mere attachment of the Appellate

Division briefs to the leave application does not suffice, as "New York's highest court has no

duty to look for a needle in a paper haystack."  *Id.* (quotation marks omitted).

> b)  *Procedural Default arising from Failure to Exhaust*

If a petitioner with an unexhausted claim would not "be permitted to return to state court

to exhaust his claims [because] no state corrective procedure remains available," a federal court

may deem the unexhausted claim exhausted.  *Brown v. Senkowski*, 152 F. App'x 15, 18 (2d Cir.

2005) (citing *Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir. 1991).  New York procedural rules would

prevent Petitioner from pursuing his unexhausted physical injury insufficiency claim in another

direct appeal or a state collateral attack.  Petitioner is granted one and only one direct appeal.

N.Y. Crim. Proc. Law § 450.10.  Nor can he raise through state collateral proceedings a claim

that has already been determined on the merits.  *Id.* § 440.10(2)(a) ("[T]he court must deny a

motion to vacate a judgment when . . . [t]he ground or issue raised upon the motion was

previously determined on the merits upon an appeal from the judgment, unless since the time of

such appellate determination there has been a retroactively effective change in the law

controlling such issue."); *see Smith*, 85 A.D.3d at 639, 926 N.Y.S.2d at 467 (denying physical

injury insufficiency claim on the merits); *see also Grey v. Hoke,* 933 F.2d at 120 (applying New

York procedural rules).  Because "[n]o purpose would be served by requiring petitioner to return

to state court for further proceedings," *Grey v. Hoke,* 933 F.2d at 120, the Court deems

Petitioner's physical injury insufficiency claim exhausted.

Upon deeming an unexhausted claim exhausted because state procedural rules prevent further state-court review, a federal habeas court should consider it procedurally defaulted. *See Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008). Petitioner's physical injury claim therefore may not be raised unless he can "demonstrate either cause and actual prejudice or that he is actually innocent." *Gutierrez v. Smith*, 702 F.3d at 111 (quotation marks and citation omitted).

Petitioner argues that he has shown cause and prejudice because the Government "failed to grasp the significance of the State Statute relative to . . . Burglary in the First Degree" and "the People and the Trial Court failed to either give a curative instruction or to address the statutory factors in its proof." Pet's Reply at 5. Petitioner does not address the procedural default that occurred when the physical injury insufficiency claim was not included in the leave application. Since Petitioner has not argued or demonstrated "cause" for this failure, the Court therefore "need not consider whether he suffered prejudice." *Brown v. Ercole*, 353 Fed. App'x 518, 520 (2d Cir. 2012).

Alternatively, Petitioner argues that his actual innocence should excuse the procedural default. Pet's Reply at 3 ("[T]he present case does in fact go to actual innocence of the crimes charged."). A claim of "[a]ctual innocence requires 'factual innocence, not mere legal insufficiency.'" *Sanchez v. Lee*, 508 Fed. App'x 46, 49 (2d Cir. 2013) (quoting *Bousley v. United States*, 523 U.S. at 623). The jury returned a guilty verdict at trial on the burglary and assault charges containing the physical injury element, and Petitioner has not presented any evidence showing factual innocence or establishing it is "more likely than not that no reasonable juror would have convicted him." *Id.* The Court thus finds that the procedural default is not excused by actual innocence. Since Petitioner has not "excused" the procedural default arising

from his failure to exhaust the physical injury insufficiency claim by pursuing all state remedies on appeal, the Court finds it procedurally barred.

          c)      *Procedural Default due to Adequate and Independent State Ground*

The physical injury claim is also procedurally barred because the Appellate Division rejected it "on a state law ground that is independent of the federal question and adequate to support the judgment," thereby precluding habeas corpus review. *Walker v. Martin*, 131 S. Ct. at 1127. Contrary to Petitioner's argument that there can be no procedural bar because the New York Court of Appeals' denied leave to appeal without considering the merits of his case, a federal court reviewing a habeas corpus petition looks to the last *reasoned* state-court decision, which is the Appellate Division's ruling. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S. Ct. 2590, 2594, 115 L. Ed. 2d 706 (1991) ("[W]here . . . the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.").

The Appellate Division denied Petitioner's claim because he failed to preserve the physical injury sufficiency issue by failing to make a contemporaneous objection during the trial. *Smith*, 85 A.D.3d at 639, 926 N.Y.S.2d at 467. Petitioner's trial counsel had argued that the burglary charge should be dismissed on other grounds, conceding that "[t]here is obviously evidence of physical injury," and choosing not to move to dismiss based on the absence of physical injury. Tr. 380–81. The Appellate Division stated clearly that it rejected Petitioner's claim because he "did not preserve his challenge to the sufficiency of the evidence supporting the element of physical injury." *Smith*, 85 A.D.3d at 639, 926 N.Y.S.2d at 467. The Appellate Division's "express reliance on the state's contemporaneous objection rule in rejecting

[Petitioner's] appeal constitutes an 'independent' state law ground for that decision." *Whitley v. Ercole*, 642 F.3d at 286 (citing *Garcia v. Lewis*, 188 F.3d 71, 76 (2d Cir. 1999).

The decision is also "adequate" because it is well-established that New York's contemporaneous objection rule is a "firmly established and regularly followed" state procedural rule. *Id.* (quoting *Garcia*, 188 F.3d at 77). Since there is no indication the rule was "misapplied in the specific circumstances presented in the petitioner's case," *Windley v. Lee*, No. 11 Civ. 1275 (DLC), 2013 WL 2350431, at *31 (citing *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir.2003)), "render[ing] the state ground inadequate to stop consideration of a federal question," the state procedural rule provides both an "independent" and an "adequate" state ground. *Kozlowski v. Hulihan*, 511 Fed. App'x 21, 25 (2d Cir. 2013), *cert. denied*, No. 13-279, 2013 WL 4656682 (U.S. Oct. 15, 2013) (quoting *Lee v. Kemna*, 534 U.S. 362, 376, 122 S. Ct. 877, 151 L.Ed.2d 820 (2002)).

Petitioner's failure to follow the state procedural rules requiring preservation of the claim therefore bars this Court from reviewing the merits of his physical injury insufficiency claim unless he can excuse the procedural default. Petitioner fails to provide "cause" for the procedural default that occurred at trial when Petitioner's counsel did not preserve an objection to the verdict based on legally insufficient evidence of physical injury. Tr. 377. Petitioner's trial counsel was aware of the factual and legal basis of this claim, making comments such as "[it is] certainly arguable [the evidence of physical injury] doesn't rise to the level necessary to prove the case beyond a reasonable doubt." Tr. 381. Counsel nonetheless focused his motion to dismiss the verdict on the knowingly unlawful entry element and conceded the legal sufficiency of the evidence showing physical injury. Tr. 377–381. Counsel instead made this argument in his summation, reviewing the evidence and testimony and arguing to the jury that "there is no

13

way that th[e]" legally required physical injury level, "impairment of physical condition or substantial pain . . . [wa]s reached in this case." Tr. 451.

Even if defense counsel erred in his choice of claims, "[a]ttorney error short of ineffective assistance of counsel is not" cause for a procedural default." *Smith v. Lee,* No. 11 Civ. 8376 (PAE), 2013 WL 2467988, at *15 (S.D.N.Y. June 7, 2013) (quoting *Murray v. Carrier*, 477 U.S. 478, 492 (1986). As described above, the default is not excused for actual innocence, and the lack of cause for default makes consideration of prejudice unnecessary. The physical injury insufficiency claim is again procedurally barred from review because Petitioner's failure to preserve an objection at trial precluded state review of his federal constitutional claim, creating an independent and adequate state ground supporting the judgment. With two procedural defaults barring review, Petitioner's physical injury insufficiency claim is denied.

### 2.   Unlawful Entry

Petitioner also claims that the evidence was legally insufficient to show that he knowingly entered Wong's building unlawfully, arguing that "no evidence was ever offered by the People to show that petitioner was illegally within the building." Pet. at 5; Pet's Reply at 8. This claim is meritless because the courts below reasonably decided that the jury could infer this element from the trial evidence.

This court assesses the merits of Petitioner's claim that the evidence at trial was not legally sufficient to prove the element of unlawful entry under a "twice-deferential standard" of review. *Parker v. Matthews*, ____ U.S. ____, 132 S. Ct. 2148, 2152, 183 L. Ed. 2d 32 (2012). The jury has the responsibility to make credibility determinations and draw conclusions from the trial evidence. *See id.* (quoting *Cavazos v. Smith,* 565 U.S. ___, 132 S. Ct. 2, 4, 181 L.Ed.2d 311 (2011) (*per curiam*)). In reviewing the case, state courts must defer to the jury and uphold a judgment against a claim of insufficient evidence when "after viewing the evidence in the light

most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979).  In reviewing such a decision in federal habeas, this court further defers, and may not overturn the rejection of a sufficiency of the evidence challenge unless "the state court decision was objectively unreasonable." *Cavazos v. Smith*, 132 S. Ct. at 4. Moreover, in making this decision under AEDPA, this court must presume correct a trial court's factual findings, including credibility determinations, requiring the petitioner to advance evidence to the contrary.  28 U.S.C. § 2254(e)(1); *see also Cotto v. Herbert,* 331 F.3d at 233 ("[The] 28 U.S.C. § 2254(e)(1) . . . presumption of correctness . . . is particularly important when reviewing the trial court's assessment of witness credibility.").

As Petitioner noted on appeal, "[t]he case at trial came down to a credibility battle between [Wong], who testified that she had been assaulted, and [Petitioner], who claimed that the victim simply interceded in a dispute between him and another man during a drug deal."  Gill Decl. Ex. F, at 11 (Def.-Appellant Br.).

The trial court denied Petitioner's motion to dismiss for lack of evidence of knowingly unlawful entry at the close of the People's case, Tr. 378–380, and his renewed motion at the close of evidence.  Tr. 436.  Petitioner's counsel argued in summation that there was insufficient evidence of knowingly unlawful entry.  Tr. 438–442.  However, the jury convicted on the first-degree burglary charge related to Ms. Wong's building.  Tr. 564–68.

On appeal, Petitioner again argued that there was insufficient evidence of knowingly unlawful entry, but the Appellate Division reasonably concluded that the jury reasonably could have made credibility determinations and inferences such that the "defendant knew he was not permitted to enter a locked residential building with a no-trespassing sign." *Smith*, 85 A.D.3d at

639, 926 N.Y.S.2d at 467. Petitioner cannot meet his burden of showing that the Appellate

Division was objectively unreasonable in holding that, viewing the evidence in the light most

favorable to the prosecution, a rational jury could have found knowingly unlawful entry beyond

a reasonable doubt. Petitioner's claim that he was deprived of a fair trial by being convicted upon

legally insufficient evidence of physical injury and knowingly unlawful entry is denied.

### C.  Prosecutorial Misconduct Claim

Petitioner also argues that he "was deprived of a fair trial based on prosecutorial

misconduct in summation when the prosecutor (a) [i]mproperly vouched for the credibility of the

complaining witness; (b) [a]sked the jury to consider irrelevant and inflammatory matters; and

(c) [d]iscussed the facts underlying [his] prior criminal history in violation of the court's

*Sandoval* ruling." Pet. at 5.

Petitioner's prosecutorial misconduct claim is unexhausted and procedurally defaulted for

similar reasons as his physical injury insufficiency claim. Petitioner failed to exhaust state

remedies by not including the prosecutorial misconduct grounds in his leave application. *See*

Gill Decl. Ex. I (Pet.'s Leave Appl.). By doing so, Petitioner again failed to "fairly present" a

federal claim to the state court below. This claim was also independently rejected on the merits

by the Appellate Division. *Smith*, 85 A.D.3d at 639, 926 N.Y.S.2d at 467. Accordingly, state

review is precluded, leading this court to deem the claim exhausted and procedurally defaulted

for the reasons stated in section III(B)(1).

Moreover, the Appellate Division's denial of Petitioner's prosecutorial misconduct claim

for failure to follow the state contemporaneous objection rule also leads to an independent and

adequate state ground barring habeas corpus relief. *See Smith*, 85 A.D.3d at 639, 926 N.Y.S.2d

at 467 (noting that with respect to prosecutorial misconduct the defendant "fail[ed] to object, or .

. . object[ed] on different grounds from those raised on appeal."). As the denial of Petitioner's

claim rested clearly on his failure to meet the state procedural rule, there is again an independent and adequate state ground for that court's decision. The result is a procedural default barring this Court from hearing Petitioner's claim that prosecutorial misconduct deprived him of a fair trial. Petitioner did not show "cause" for either procedural default, and as described above, has not shown actual innocence, so this claim is denied.

### D.   *Apprendi* Sentencing Claim

Petitioner argues that his adjudication and sentencing as a persistent felony offender violated the Sixth and Fourteenth Amendments to the United States Constitution because the judge imposed a sentence beyond the otherwise applicable statutory maximum based on facts not found by the jury beyond a reasonable doubt. Pet. at 6. Petitioner's claim is that his adjudication and sentence as a persistent felony offender violated the rule that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362–63, 147 L.Ed.2d 435 (2000).

Petitioner's qualification as a persistent felony offender does not violate *Apprendi* because it was based upon only the explicitly-excepted "fact[s] of [his] prior convictions." *Id.*; *see* Sent'g Tr. 28 ("Clearly the defendant qualifies as a persistent felony offender under the first prong of the test in that he was convicted of two felonies prior to, two or more felonies prior to this latest conviction and he received a year or more in jail on both of those prior convictions.") Petitioner's claim falls squarely under the Second Circuit's *en banc* decision in *Portalatin*, which examined New York's discretionary persistent felony offender statute and found that, "as interpreted by the New York Court of Appeals, [the statute] creates a recidivist sentencing scheme in which the only factual predicates necessary to impose the enhanced sentence relate to the defendant's criminal history." *Portalatin v. Graham* , 624 F.3d 69, 93–94 (2d Cir. 2010) (en

banc); *see also West v. Breslin*, 410 Fed. App'x 393, 394 (2d Cir. 2011) ("New York's persistent

felony offender statute [i]s consistent with the U.S. Supreme Court's holdings . . . .").

Accordingly, Petitioner's *Apprendi* claim is without merit and denied.

### E.   Excessive Sentence Claim

Petitioner also asserts that the trial court abused its discretion by imposing an unduly

harsh persistent felony offender sentence upon him when his criminal history consisted only of

addiction-related offenses rather than repetitive serious offenses. Pet. at 6. Petitioner's claim

seems to bring only the same state law grounds raised on direct appeal; to the extent that

Petitioner's claim is liberally construed as raising a constitutional objection to his sentence, such

a claim would be unexhausted because that dimension of his sentencing claim was not "fairly

presented" on direct appeal. *See Carvajal v. Artus*, 633 F.3d at 104. Regardless, 28 U.S.C.

§ 2254(b)(2) permits denial of an unexhausted claim on the merits, and it is well-established that

a claim of an unduly harsh sentence does not raise a cognizable federal constitutional issue if the

sentence was within the range prescribed by state law. *See White v. Keane*, 969 F.2d 1381, 1383

(2d Cir. 1992); *see also McCall v. Rivera*, No. 05 Civ. 5583 (KMK) (MDF ), 2013 WL 2996190,

at *18 (S.D.N.Y. June 5, 2013)). Petitioner's sentence was within the range prescribed by the

state law permitting the trial court to exercise discretion in imposing a persistent felony offense.

*See* N.Y. Crim. Proc. Law § 400.20. Petitioner was lawfully adjudicated a persistent felony

offender based upon his prior criminal history and the instant conviction for first-degree

burglary, a Class B Felony. *See* N.Y. Penal Law § 140.30; Sent'g Tr. 28. The persistent felony

offender adjudication made petitioner eligible for a maximum sentence of an indeterminate term

of twenty five years to life imprisonment. *See* N.Y. Penal Law § 70.10; N.Y. Crim. Proc. Law

§ 400.20 (authorizing imposition of sentences ordinarily applicable to Class A-1 felonies for

persistent felony offenders convicted of lesser felonies). Petitioner's indeterminate sentence of

fifteen years to life imprisonment is thus below the statutory maximum and within the legally permitted range. *See* N.Y. Penal Law § 70.10; N.Y. Crim. Proc. Law § 400.20; *see also* Sent'g Tr. 30 ("I'm not going to impose the maximum sentence that the People are requesting of twenty-five years to life."). Petitioner's claim for habeas relief upon the ground that the trial court abused its discretion and imposed an excessive sentence is denied.

## IV.    CONCLUSION

For the foregoing reasons, Petitioner's § 2254 petition is denied. In addition, the Court declines to issue a certificate of appealability. Petitioner has not made a substantial showing of a denial of a federal right, and appellate review is therefore not warranted. *See Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005). The Court also finds, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438, 445, 82 S.Ct. 917, 921, 8 L.Ed.2d 21 (1962). The Clerk of Court shall dismiss this petition and close the case.

SO ORDERED.

Dated: ____December 11____, 2013
New York, New York

_____
ALISON J. NATHAN
United States District Judge